```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/12/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
KELECHI GERALD NWOZUZU,                                       :
                                        Plaintiff,            :
                                                              :   14 Civ. 8589 (LGS)
              -against-                                       :
                                                              :   OPINION & ORDER
UNITED STATES OF AMERICA,                                     :
                                        Defendant.            :
                                                              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

From 2005 until 2006 and again from 2010 until 2012, the U.S. Immigration and Customs Enforcement ("ICE"), an agency under the Department of Homeland Security ("DHS"), detained Plaintiff Kelechi Gerald Nwozuzu pursuant to a statute that authorizes mandatory detention of "aliens." *See* 8 U.S.C. § 1226(c)(1)(B). After years of litigation, in 2013, the Second Circuit determined that Plaintiff was not an alien, but a citizen. *See Nwozuzu v. Holder*, 726 F.3d 323 (2d Cir. 2013). Plaintiff now brings suit against Defendant United States of America (the "Government") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., alleging false imprisonment and seeking nine million dollars in damages. The Government moves to dismiss. For the reasons that follow, the motion is granted.

I.  **BACKGROUND**

The following recitation is based on the allegations in the operative First Amended Complaint (the "Complaint"), documents incorporated by reference or integral to the Complaint and judicially noticed facts.[1]

---

[1] Even though this case is at the pleading stage, given the long litigation history preceding this action, the facts are undisputed and have been extensively memorialized elsewhere. *See, e.g.*, *Nwozuzu*, 726 F.3d at 323; *Matter of Nwozuzu*, 24 I. & N. Dec. 609 (BIA 2008), *reconsideration denied*, *In Re: Kelechi Gerald Nwozuzu, a.k.a., Gerald K. Nwozuzu*, 2009 WL 1863820 (BIA June 12, 2009); *In Re: Kelechi Gerald Nwozuzu, a.k.a., Gerald K. Nwozuzu*, 2011 WL 1792092 (BIA Apr. 20, 2011).

Plaintiff was born in Nigeria in 1977. In 1982, he moved to the United States to join his father who was in the country on an F-1 non-immigrant student visa. In March 1990, Plaintiff's father filed an immigrant visa petition on Plaintiff's behalf, which was approved in March 1993. In 1994, both of Plaintiff's parents were naturalized as U.S. citizens. On February 6, 1995, Plaintiff, at the age of 17, applied to adjust his status to that of lawful permanent resident. For reasons that are unclear, the application was not decided at the time. *See Nwozuzu*, 726 F.3d at 325.

While his application to adjust status was pending, Plaintiff applied for a travel document to visit his ailing grandmother in Nigeria, but left for Nigeria while this application also was pending. On August 21, 1995, Plaintiff was denied admission into the United States because he had left without the requisite travel document. He returned to the United States on December 12, 1998, after becoming a lawful permanent resident at the age of 21. *See Nwozuzu*, 726 F.3d at 325.

On January 7, 2004, Plaintiff was convicted in New York state court for possessing a weapon and marijuana. During his criminal detention on Rikers Island, ICE officers interviewed Plaintiff about his immigration status. Plaintiff informed them that his parents had acquired U.S. citizenship through naturalization prior to Plaintiff's eighteenth birthday. On June 16, 2005, DHS filed a Notice to Appear charging Plaintiff with removability pursuant to 8 U.S.C. § 1227(a)(2)(C), which delineates a "class[] of deportable aliens," and took him into immigration custody pursuant to 8 U.S.C. § 1226(c)(1)(B), which authorizes mandatory detention for "aliens" removable under the relevant statutes. (Subsequently, on April 16, 2010, DHS added a charge of removability under 8 U.S.C. § 1227(a)(2)(B)(i), based on Plaintiff's marijuana conviction. *See*

2

*Nwozuzu*, 726 F.3d at 326 n.4.)  While in ICE custody, Plaintiff applied for citizenship in August 2005 and April 2006, but his applications were denied.

On October 6, 2006, the immigration judge (the "IJ") presiding over Plaintiff's removal proceedings held that DHS had failed to meet its burden of proving alienage and terminated the proceedings against Plaintiff.  Plaintiff was released on the same day, after 480 days in custody.

The IJ's decision turned on section 321(a) of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1432(a) (1994) (repealed 2000) ("Section 321(a)"), which was in effect in 1994 when Plaintiff's parents were naturalized.  Section 321(a) provides in relevant part that

> [a] child born outside of the United States of alien parents . . . becomes a citizen of the United States upon . . .
> (1) The naturalization of both parents; . . . and if . . .
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized . . . or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a).  "A child who achieves derivative citizenship through this provision does so automatically upon fulfilling the specified conditions," and not by adjudication.  *Ashton v. Gonzales*, 431 F.3d 95, 97-98 (2d Cir. 2005); *see also Matter of Fuentes-Martinez*, 21 I. & N. Dec. 893, 896 (BIA 1997) ("No application is filed, no hearing is conducted, and no certificate is issued when such citizenship is acquired.").  Accordingly, if Plaintiff obtained derivative citizenship before he turned eighteen, under Section 321(a) he did not have to take any further action to secure his citizenship.  The IJ "found that although [Plaintiff] was not 'residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized,' he had submitted sufficient evidence to show that he

3

began 'to reside permanently in the United States while under the age of eighteen years.'" *Matter of Nwozuzu*, 24 I. & N. Dec. at 610.

After releasing Plaintiff from ICE custody, the Government appealed the IJ's decision to the Board of Immigration Appeals (the "BIA"). Under the Government's view, Plaintiff could not have begun to "reside permanently" in the United States as defined by Section 321(a) because he had not been admitted as a permanent resident at that time. In a decision dated September 10, 2008, the BIA agreed with the Government, sustained the appeal and remanded to the IJ to complete Plaintiff's removal proceedings. *See generally Matter of Nwozuzu*, 24 I. & N. Dec. at 608.

In December 2009, Plaintiff received a notification from ICE asking him to appear at the ICE Field Office in New York City on January 13, 2010. When Plaintiff appeared on the appointed date, ICE again took him into custody. On June 9, 2011, a different IJ ordered Plaintiff removed from the United States. Plaintiff appealed the removal order to the BIA, which dismissed the appeal on November 17, 2011. *See In Re: Kelechi Gerald Nwozuzu, a.k.a., Gerald K. Nwozuzu*, 2011 WL 1792092. On December 9, 2011, Plaintiff timely appealed the BIA's decision to the Second Circuit. For reasons that are not clear from the Complaint, ICE released Plaintiff on August 23, 2012, after 958 days in custody. Approximately one year later, on August 12, 2013, the Second Circuit decided that the initial IJ's decision was correct -- Plaintiff derived citizenship through his parents under Section 321(a) by "residing permanently" in the United States prior to his eighteenth birthday, even though he had not obtained legal permanent residence by that date. *See Nwozuzu*, 726 F.3d at 334.

On April 6, 2014, Plaintiff filed two administrative claims with DHS -- one for false imprisonment for the 480 days of his immigration custody from 2005 to 2006, and the second for

4

false imprisonment for the 958 days of his immigration custody from 2010 to 2012. When DHS did not respond to his claims within six months, Plaintiff commenced the present action alleging two counts of false imprisonment.

## II.   LEGAL STANDARD

In defending against a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the non-moving party bears the burden of proving the court's subject matter jurisdiction by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court "may refer to evidence outside the pleadings" in resolving the motion. *Id.*

On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party. *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Federal Rule of Civil Procedure 8 "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

## III.   DISCUSSION

The Government argues that the Complaint should be dismissed for lack of subject matter jurisdiction as well as on the merits. As to subject matter jurisdiction, the Government argues that 8 U.S.C. § 1252(g) and 28 U.S.C. § 2860(a) divest the Court of jurisdiction to hear Plaintiff's claims. As to the merits, the Government claims that Plaintiff has failed to timely exhaust his

5

administrative remedies; Plaintiff's claims are not entitled to equitable tolling; and, in any case, Plaintiff's detention was legally justified.[2]  For the reasons below, the Government's motion to dismiss is granted for lack of subject matter jurisdiction.  Accordingly, the substantive merits of the Complaint are not addressed.

Plaintiff brings suit under the FTCA.  The FTCA creates a limited waiver of the traditional sovereign immunity enjoyed by the United States, and allows a private citizen to sue the United States for injuries caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant[.]"  28 U.S.C. § 1346(b)(1).  The United States has specifically waived sovereign immunity for false imprisonment claims.  *See Liranzo v. United States*, 690 F.3d 78, 96 (2d Cir. 2012) (citing 28 U.S.C. § 2680(h)).  The Government argues that two statutory exceptions nevertheless divest the Court of subject matter jurisdiction.

### A.    8 U.S.C. § 1252(g)

The Government incorrectly argues that 8 U.S.C. § 1252(g) strips federal courts of jurisdiction in considering Plaintiff's claims.  Section § 1252(g) provides in relevant part that, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any *alien* arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any *alien* . . . ."  (emphases added).  "[C]ourts must presume that

---

[2]   The Government initially argued that the FTCA's time limits were jurisdictional, that Plaintiff had failed to timely exhaust administrative remedies and that equitable tolling, if available, was unwarranted.  On April 22, 2015, after the present motion was fully briefed, the Supreme Court held that the FTCA's time limits are not jurisdictional and may be equitably tolled.  *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015).  In response, by letter dated June 8, 2015, the Government requested that its failure-to-exhaust argument be analyzed on the merits under Rule 12(b)(6), rather than on jurisdictional grounds under Rule 12(b)(1).

a legislature says in a statute what it means and means in a statute what it says, and because the text of section 1252(g) mentions only claims by aliens, it does not govern claims by citizens." *Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013) (internal citations and quotation marks omitted); *cf. Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 623 (6th Cir. 2010) (holding that "a complaint brought by a U.S. citizen child" on behalf of non-citizen parent "does not fall fairly within the 'on behalf of any alien' jurisdictional bar in § 1252(g)"). Because Plaintiff is a citizen, § 1252(g) by its terms does not act as a jurisdictional bar to this case.

Limiting § 1252(g) to its plain terms is also consistent "with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Kucana v. Holder*, 558 U.S. 233, 251 (2010). The Supreme Court has "consistently applied that interpretive guide to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction." *Id.* (collecting cases).

The Government's arguments to the contrary are unavailing. The Government argues, in a footnote, that § 1252(g) creates a jurisdictional bar despite its "express language" because "[a]lthough Plaintiff is currently a United States citizen, he did not apply for citizenship until he was in detention" and was at all relevant times "determined to be an alien." The Second Circuit held that Plaintiff "satisfied the requirements for derivative citizenship under section 321(a)" on February 6, 1995. *Nwozuzu*, 726 F.3d at 334. Derivative citizenship under Section 321(a) is acquired "automatically" by operation of the law and requires neither application nor adjudication. *Ashton*, 431 F.3d at 97-98; *see also Belleri*, 712 F.3d at 545 ("A child acquires derivative citizenship by operation of law, not by adjudication. . . . If [the plaintiff] obtained derivative citizenship in 1999, he did not have to take any further action to secure his citizenship."). Accordingly, whether Plaintiff was "determined to be an alien" and when

7

Plaintiff applied for citizenship are irrelevant.  Plaintiff became a citizen on February 6, 1995, and § 1252(g) does not bar judicial review of his claims of false imprisonment for any period after that date.

The Government erroneously relies on inapposite cases that say nothing about whether § 1252(g) presents a jurisdictional bar to suits brought on behalf of citizens.  *See Kareva v. United States*, 9 F. Supp. 3d 838, 839 (S.D. Ohio 2014) (case brought by "a citizen of Russia"); *Hodgson v. United States*, No. 13 Civ. 702, 2014 WL 4161777, at *1 (W.D. Tex. Aug. 19, 2014) (case brought by "a lawful permanent resident"); *Alcaraz v. United States*, No. C-13-511, 2013 WL 4647560, at *2 (N.D. Cal. Aug. 29, 2013) (case brought by citizen and his non-citizen wife alleging, inter alia, false imprisonment of non-citizen wife); *Prasad v. Quarantillo*, No. 06 Civ. 12900, 2008 WL 5191232, at *1 (S.D.N.Y. Dec. 2, 2008) (case brought by "native of India" who applied for adjustment of status to lawful permanent resident); *Valencia-Mejia v. United States*, No. Civ. 08-2943, 2008 WL 4286979, at *1 (C.D. Cal. Sept. 15, 2008) (case brought by "a citizen of Mexico").

In sum, § 1252(g) presents no jurisdictional bar here.

### B.      28 U.S.C. § 2860(a)

However, the Government persuasively argues that 28 U.S.C. § 2860(a) acts as a jurisdictional bar to the current suit.  Section 2860(a) provides in relevant part that the FTCA's waiver of sovereign immunity

> shall not apply to . . . [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2860(a).  An early Supreme Court case observed in general terms that for purposes of the FTCA, "'[d]ue care' implies at least some minimal concern for the rights of others." *Hatahley v. United States*, 351 U.S. 173, 181 (1956); *see also Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1262 (2d Cir. 1975) (citing *Hatahley* in concluding that any "[s]ubjective indication of such concern on the part of" the relevant government employees in that case was "wholly lacking").  More recently, the D.C. Circuit articulated a test for the "due care" exception. *See Crumpton v. Stone*, 59 F.3d 1400, 1403 (D.C. Cir. 1995).  The Fourth Circuit adopted the D.C. Circuit's formulation in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005).  Both parties urge this Court to do the same here.

Under *Crumpton,* courts first ask whether a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  *Crumpton*, 59 F.3d at 1403 (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).  "Second, if a specific action is mandated," courts "inquire as to whether the officer exercised due care in following the dictates of that statute or regulation.  If due care was exercised, sovereign immunity has not been waived."  *Welch*, 409 F.3d at 652 (internal citations omitted).

The Government argues that immigration officials acted with due care in following the specific mandates of 28 U.S.C. §§ 1226(c) and 1227(a).  Section1226(c) provides:

> The Attorney General shall take into custody any alien [who is deportable under § 1227(a) for having a drug conviction] when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c).  Because the "shall" language in the statute prescribes a mandatory course of action, the controlling inquiry is whether the immigration authorities acted with "due care."

9

Plaintiff repeatedly argues that the authorities had all the information they needed at the time of Plaintiff's first detention to reach the same conclusion that the Second Circuit did eight years later. At its essence, Plaintiff's argument is that the immigration authorities so grossly misinterpreted Section 321(a) that they cannot be said to have acted with "due care." However, when Plaintiff was detained in 2005 and in 2010, the immigration authorities' understanding of Section 321(a) as precluding his claim of derivative citizenship was far from extraordinary. Even the Second Circuit recognized in 2013 that its ultimate reading of Section 321(a) to allow Plaintiff's claim of derivative citizenship was relatively novel. *See Nwozuzu*, 726 F.3d at 329 n.5 (recognizing that "the two other circuits to have considered this issue, the Ninth Circuit and the Eleventh Circuit, have held to the contrary"); *see United States v. Forey-Quintero*, 626 F.3d 1323, 1326-27 (11th Cir. 2010) (relying on the BIA's interpretation of Section 321(a) in *In re Nwozuzu*); *Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1062 (9th Cir. 2008) ("A plain reading of the statute evidences the requirement that the child be residing pursuant to lawful admission either at the time of the parent's naturalization or at some subsequent time while under the age of 18."). In addition, ICE released Plaintiff from detention on the same day that the IJ concluded, contrary to the Government's interpretation of the law, that Plaintiff was a citizen, undercutting any argument that the Government acted without regard for Plaintiff's rights. Consequently, the immigration authorities acted with due care in concluding that Plaintiff was not a citizen, but a deportable alien subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).

In connection with his second period of detention beginning in 2010, Plaintiff also suggests that the Government did not act with "due care" in detaining him five years after he was

10

initially released from detention because the statute only authorizes detention "when the alien is released." 8 U.S.C. § 1226(c).[3]

In a 2001 decision, the BIA, which is tasked with "provid[ing] clear and uniform guidance to the [immigration authorities] . . . and the general public on the proper interpretation and administration of the [INA] and its implementing regulations," 8 C.F.R. § 1003.1(d)(1), considered and rejected this argument. *See In Re Rojas*, 23 I. & N. Dec. 117, 124 (BIA 2001). The BIA held that an alien "is subject to mandatory detention pursuant to section [1226](c) . . . , despite the fact that he was not taken into [immigration] custody immediately upon his release from state custody." *Id.* at 127. Courts in this District and across the country are divided over the interpretation of section 1226(c). Many courts, including the two circuit courts to have addressed this question, have either found the statute ambiguous and accorded the BIA's reading deference or concluded that the statute unambiguously authorizes mandatory detention without any temporal limitation. *See Reynoso v. Aviles*, --- F. Supp. 3d ----, No. 14 Civ. 9482, 2015 WL 500182, at *4 n.6 (S.D.N.Y. Feb. 5, 2015) (collecting cases); *see also Sylvain v. Attorney Gen. of U.S.*, 714 F.3d 150, 161 (3d Cir. 2013) ("[E]ven if the statute calls for detention 'when the alien is released,' . . . nothing in the statute suggests that officials lose authority if they delay."); *Hosh v. Lucero*, 680 F.3d 375, 384 (4th Cir. 2012) ("We hold that the BIA's interpretation of § 1226(c) in Rojas was reasonable, and must be afforded deference."). Many other courts, including this Court, have reached the opposite conclusion and held that § 1226(c) unambiguously authorizes mandatory detention only "*at or around the time the person is released from custody.*" *Minto v. Decker*, --- F. Supp. 3d ----, No. 14 Civ. 07764, 2015 WL 3555803, at *4 (S.D.N.Y. June 5,

---

[3] In his motion papers, Plaintiff makes this argument in opposition to the Government's contention that Plaintiff's suit is untimely and does not warrant tolling. However, the argument is more appropriately considered in the context of the "due care" jurisdictional issue.

11

2015) (emphasis added); *see also Reynoso*, 2015 WL 500182, at *4 n.5 (collecting cases). No circuit court has adopted the latter view.[4] The Second Circuit has not addressed this issue, but soon may do so in the pending appeal in *Lora v. Shanahan* (U.S.C.A. Dkt. No. 14-2343).

The Court is sympathetic to Plaintiff's position. However, in light of the deep division among the courts regarding whether § 1226(c) places any temporal limitation on the Government's mandatory detention authority, Plaintiff's argument that the Government did not act with "due care" in detaining him years after his initial release necessarily fails. The United States has not waived its sovereign immunity from suit where its agents follow the law as understood by the agency tasked with interpreting it and a large number of federal judges.

## IV. CONCLUSION

For the foregoing reasons, the Government's motion to dismiss is GRANTED in its entirety.

The Clerk of Court is directed to close the motion at Dkt. No. 23, and to close this case.

SO ORDERED.

Dated: August 12, 2015
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

---

[4] Although a First Circuit panel adopted the latter view, the court granted the Government's petition for en banc hearing and withdrew the panel's opinion. *See Castaneda v. Souza*, 769 F.3d 32, 41 (1st Cir. 2014) ("In the government's view, § 1226(c) subjects an alien to detention without bail at any time after release, including years later, and detention can continue years after release while the alien fights removal. We think the government's view of § 1226(c) is incorrect . . . ."), *reh'g en banc granted, opinion withdrawn* (Jan. 23, 2015).